IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| OCTAVIO RODRIGUEZ CIRA and | : | |
| FABIOLA MERLOS MARTINEZ, | : | |
| as Surviving Parents of | : | |
| FERNANDO OCTAVIO RODRIGUEZ, | : | |
| Deceased, and | : | CIVILACTION |
| OCTAVIO RODRIGUEZ as | : | NO: |
| Administrator of the Estate of | : | |
| FERNANDO OCTAVIO RODRIGUEZ, | : | |
| | : | JURY TRIAL DEMANDED |
| PLAINTIFFS, | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF HAMPTON; | : | |
| COUNTY OF HENRY; | : | |
| OFFICER GREGORY R. BOWLDEN, | : | |
| In His Individual and Official Capacity; | : | |
| OFFICER MASON C. LEWIS, In His | : | |
| Individual and Official Capacity; | : | |
| OFFICER MARCUS J. STROUD, In | : | |
| His Individual and Official Capacity; | : | |
| OFFICER ROBERT P. BUTERA, In | : | |
| His Individual Capacity; and | : | |
| OFFICER QUINTON C. PHILLIPS, | : | |
| In His Individual Capacity, | : | |
| | : | |
| DEFENDANTS. | : | |

**COMPLAINT FOR DAMAGES**

Plaintiff Octavio Rodriguez Cira and Plaintiff Fabiola Merlos Martinez, as surviving parents of Fernado Octavio Rodriguez, deceased, and Octavio Rodriguez, as Administrator of the Estate of Fernando Octavio Rodriguez ("Plaintiffs") hereby file this Complaint pursuant to 42 U.S.C. §§ 1983 and 1988 and state law claims against the City of Hampton in the State of Georgia, the County of Henry in the State of Georgia, Officer Gregory R. Bowlden, Officer Mason C. Lewis, Officer Marcus J. Stroud, Officer Robert P. Butera, and Officer Quinton C. Phillips (collectively referred to as "Defendants") and state as follows:

## INTRODUCTION

1.     This Complaint demands justice for the death of Fernando Octavio Rodriguez, who died an excruciating and humiliating death at the hands of the officers named above.

2.     On September 20, 2019, 24-year-old Fernando Octavio Rodriguez (hereinafter referred to as "Fernando") was walking down the middle of a street in Hampton, Georgia.  Fernando was unclothed, unarmed, nonthreatening, noncombative, and in need of medical attention.

3.     At approximately 10:12 p.m., an officer from the City of Hampton fired a taser into Fernando's back, causing Fernando to fall the ground in pain. Fernando would never stand again.

4.     Over the next ten minutes, officers from the City of Hampton Police Department and the Henry County Police Department deployed tasers into Fernando's body at least 15 times.  During the last three times that Fernando was tased, Fernando was handcuffed and lying face down in the prone position.

5.     At approximately 10:18 p.m., the officers pinned Fernando to the ground by kneeling and standing on Fernando's back, neck, head, arms, and legs, thereby depriving Fernando of oxygen.  At approximately 10:27 p.m., officers noticed that Fernando was unresponsive and no longer breathing.  Instead of rendering aid, or at least getting off Fernando's body, officers continued to pin Fernando to the ground for more than two minutes until paramedics arrived.  When paramedics arrived, Fernando was not breathing, and he had to be resuscitated on at least two occasions.

6.      Fernando died at Grady Hospital on September 23, 2019.  The medical examiner ruled that Fernando's death was a homicide and found the cause to be "*ASPHYXIA DUE TO PHYSICAL RESTRAINT IN PRONE POSITION WITH COMPRESSION OF CHEST*."

7.     Fernando had a right under the Fourth Amendment to United States Constitution to be free from the use of excessive and unreasonable force.  That

right was violated when officers repeatedly tased Fernando and pinned Fernando to the ground cutting off his oxygen supply.

8.    The officers named in this Complaint caused Fernando's extreme suffering and death by way of their unlawful actions.  There was no legal justification for their actions, and their actions are not protected by the legal doctrine known as "qualified immunity."

**PARTIES, JURISDICTION, AND VENUE**

9.    Fernando, deceased, was an adult citizen of the United States of America and a resident of Henry County in the State of Georgia.  Fernando is survived by next of kin including his natural father and mother.

10.    Plaintiff Octavio Rodriguez Cira and Plaintiff Fabiola Merlos Martinez are the surviving parents of Fernando.  Plaintiff Octavio Rodriguez Cira is a resident of Spalding County, Georgia.  Plaintiff Fabiola Merlos Martinez is a resident of Colquitt County, Georgia. Fernando did not have a spouse or children. Fernando's parents are therefore the proper individuals to bring this wrongful death action. *See*, O.C.G.A. § 19-7-1.

11.    For each of the counts set forth below, Plaintiff Octavio Rodriguez Cira and Plaintiff Fabiola Merlos Martinez are entitled to the whole value of Fernando's life as well as future lost income.

12.     Plaintiff Octavio Rodriguez is a citizen of the United States of America and a resident of Henry County, Georgia.  Plaintiff Octavio Rodriguez is the adult sibling of Fernando Rodriguez and has been appointed the administrator of Fernando's estate, which will be administered in Henry County, Georgia.

13.     Plaintiff Octavio Rodriguez properly brings this action as the administrator of Fernando's estate and, for each of the counts set forth below, is entitled to damages for Fernando's mental and physical pain and suffering, emotional distress, fear, anxiety, humiliation, outrage, medical and funeral expenses, and all other forms of damages allowed for by law.

14.     Defendant City of Hampton is a municipality located in Henry County, Georgia ("City of Hampton").  The Hampton Police Department is and was at all times a City of Hampton agency, providing the vehicle through which the city fulfills its policing functions.  Service of process may be made by providing a copy of the complaint and summons to the mayor, Steve Hutchison, or to an agent authorized by appointment to receive service.

15.     Defendant County of Henry is a county located in the State of Georgia ("Henry County"). The Henry County Police Department is and was at all times a County of Henry agency, providing the vehicle through which the county fulfills its policing functions. Service of process may be made by providing a copy of the

complaint and summons to the chairman of the board of commissioners, Carlotta Harrell, or to an agent authorized by appointment to receive service.

16.     Defendant Officer Gregory R. Bowlden ("Defendant Bowlden") was a police officer employed by the City of Hampton.  He is sued in his individual and official capacity.  He is a resident of Spalding County, Georgia.

17.     Defendant Mason C. Lewis ("Defendant Lewis") was a police officer employed by the City of Hampton.  He is sued in his individual and official capacity.  He is a resident of Spalding County, Georgia.

18.     Defendant Marcus J. Stroud ("Defendant Stroud") was a police officer employed by the City of Hampton.  He is sued in his individual and official capacity.  He is a resident of Henry County, Georgia.

19.     Defendant Robert P. Butera ("Defendant Butera") was a police officer employed by Henry County.  He is sued in his individual capacity. He is a resident of Pike County, Georgia.

20.     Defendant Quinton C. Phillips ("Defendant Phillips") was a police officer employed by Henry County.  He is sued in his individual capacity.  He is a resident of Butts County, Georgia.

21.     The five officers named in this Complaint are referred to collectively as "Defendant Officers".

22.    At all times relevant to this Complaint, Defendant Bowlden, Defendant Lewis, and Defendant Stroud were acting under color of state law as duly sworn, certified law enforcement officers employed by the City of Hampton Police Department.

23.    At all times relevant to this Complaint, Defendant Butera and Defendant Phillips were acting under color of state law as duly sworn, certified law enforcement officers employed by the Henry County Police Department.

24.    This Court has jurisdiction over the subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this action arises under the laws and Constitution of the United States and pertains to violations of Fernando's civil rights.

25.    This Court has supplemental jurisdiction of the state law tort claims in this Complaint pursuant to 28 U.S.C. § 1367.

26.    This Court has personal jurisdiction over the Defendants because the Defendants are domiciled in the State of Georgia and the events or omissions giving rise to the claim occurred in this district.

27.    Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 as at least one of the Defendants reside in this district and a

substantial part of the events or omissions giving rise to the claim occurred in this district.

28.     Venue is proper in the Atlanta Division as at least one of the Defendants reside in this division and as a substantial part of the events of omissions giving rise to the claim occurred in this division.

**FACTS**

29.     In the late evening hours of September 20, 2019, Fernando was walking home after attending the "Imagine Fest" in Hampton, Georgia.

30.     Around 10:00 p.m., an individual called 911 to report that an unclothed man was walking down a street in Hampton, Georgia.

31.     Defendant Lewis and Defendant Stroud responded to the scene – near the intersection of Oak Street and Windsor Parkway in the City of Hampton – and found Fernando walking down the street.  Body cameras from various officers recorded portions of the events that transpired next.

32.     As officers arrived at the scene at approximately 10:11:04 p.m., Fernando was unclothed, unarmed, noncombative, in a confused state of mind, and walking away from officers.

33.     While Fernando was walking away from officers, Defendant Lewis yelled at Fernando to get on the ground at 10:11:16 p.m.

34.     At 10:11:50 p.m., while Fernando was still walking away from officers, Defendant Lewis threatened to fire his taser at Fernando.

35.     Immediately following this threat, Defendant Stroud instructed Defendant Lewis to deploy his taser.

36.     At 10:11:54, Defendant Lewis deployed his taser, striking Fernando in the back.  Fernando immediately and involuntarily fell to the ground.

37.     Clearly in agony, and while the taser was still connected to and shocking Fernando, Fernando rolled onto his back.

38.     The officers then commanded Fernando to roll over onto his stomach.

39.     At 10:12:00 p.m., Defendant Stroud instructed Defendant Lewis to "*give it to him again*."

40.     During this time, Fernando is clearly in agony, noncombative, and unable to follow the officer's directive to roll over.

41.     At 10:12:12 p.m., Defendant Stroud calmly walked up to Fernando with handcuffs in one hand, and with the other, made a motion for Fernando to roll over.

42.     At 10:12:16 p.m., Defendant Lewis delivered a second round of electricity into Fernando's body via the taser, causing Fernando to scream in pain (a mere 20 seconds after the first deployment).

43.     Prior to the second deployment of the taser, Fernando was noncombative, nonthreatening, and laying on the ground naked.

44.     At 10:12:26 p.m., Defendant Lewis delivered a third round of electricity into Fernando's body causing him to scream in pain (a mere 30 seconds after the first deployment).

45.     Prior to the third deployment of the taser, Fernando was noncombative, nonthreatening, and laying on the ground naked.

46.     At 10:12:43 p.m., Fernando attempted to sit upright at which point Defendant Lewis told Fernando that "*you're going to get it again*."

47.     At 10:12:51 p.m., Defendant Stroud calmly told Fernando "*roll over so we can get you some help, OK?*"

48.     At 10:12:58 p.m., Defendant Lewis sent a fourth round of electricity into Fernando's body (1 minute and 4 seconds after the first deployment).  From a seated position, Fernando fell backward onto the ground and again screamed in pain.

49.     Prior to the fourth deployment, Fernando was noncombative, nonthreatening, and sitting on the ground naked.

50.     Defendant Stroud again told Fernando to roll over onto his stomach.

51.     At 10:13:12 p.m., Defendant Stroud told Fernando to roll over or "*you're going to keep getting tased*."

52.     At 10:13:20 p.m., Defendant Stroud told Fernando to roll over "*so we can get you an ambulance, or something, OK?*"

53.     At 10:13:54 p.m., Defendant Bowlden arrived at the scene.

54.     At 10:13:54 p.m., Defendant Lewis explained: "*I done tased him about three times…*"

55.     The officers continued to instruct Fernando to roll over onto his stomach so that they could handcuff him.

56.     At 10:14:16 p.m., Defendant Bowlden kicked Fernando with his foot and stated: "*Can you hear me?*"

57.     Defendant Lewis then screamed: "*You're going to get it again!*"

58.     At 10:14:43 p.m., Defendant Stroud stated: "*We'll get you an ambulance*."

59.     At 10:14:51 p.m., Defendant Stroud yelled: "*You're going to get tased again!*"

60.     At 10:15:20 p.m., Defendant Bowlden stated: "*Dude, you're about to piss me off*."

61.    At 10:15:30 p.m., Defendant Bowlden tried to forcefully flip

Fernando over with his hand and then stated: "*You sweaty little hog you.*"

62.    At 10:15:58 p.m., Defendant Phillips arrived at the scene.

63.    At 10:15:58 p.m., Defendant Lewis sent a fifth round of electricity

into Fernando's body (4 minutes and 4 seconds after the first deployment).

Fernando can be seen writhing on the ground in pain.

64.    Prior to the fifth deployment, Fernando was noncombative,

nonthreatening, and laying on the ground naked.

65.    At 10:16:10 p.m., Defendant Bowlden removed his taser from his

holster and pointed it at Fernando.

66.    At 10:16:12 p.m., Defendant Bowlden fired his taser at Fernando and

struck Fernando with the taser, delivering a sixth round of electricity into

Fernando's body (four minutes and 18 seconds after the first round).

67.    At this point, Fernando attempted to scoot backwards while laying

down on his back.

68.    At 10:16:29 p.m., Defendant Stroud delivered a seventh round of

electricity into Fernando's body (four minutes and 35 seconds after the first

deployment).

69.     Fernando began screaming in pain while still laying naked on the ground.

70.     At 10:17:13 p.m., the officers agreed to attempt to forcefully roll Fernando onto his stomach.

71.     At 10:17:20 p.m., Defendant Bowlden delivered an eighth round of electricity into Fernando's body.

72.     At 10:17:24 p.m., Defendant Bowlden deployed a ninth round of electricity into Fernando's body.

73.     At 10:17:44 p.m., Defendant Phillips deployed a tenth round of electricity into Fernando's body via his taser.

74.     The officers then grabbed Fernando's body and attempted to roll him over.

75.     At 10:17:52 p.m., Defendant Phillips deployed an eleventh round of electricity into Fernando's body via taser.

76.     By this point, Defendant Butera had arrived at the scene.

77.     At 10:17:58 p.m., officers got on top of Fernando and rolled him over.

78.     At 10:18:22 p.m., officers handcuffed Fernando's hands.

79.     At 10:18:35 p.m., Defendant Stroud can be heard saying: "*Hit him again!*"

13

80.     At 10:18:37 p.m., Defendant Phillips deployed a twelfth round of electricity into Fernando's body.

81.     At 10:18:42 p.m., Defendant Stroud can be heard saying: "*Hit him again!*"

82.     At 10:18:45 p.m., Defendant Phillips deployed his taser sending electricity into Fernando's body for a thirteenth time.

83.     At 10:18:56 p.m., an officer can be heard saying: "*Somebody sit on him… somebody get on his back with a knee*."

84.     At 10:19:06 p.m., an officer commented: "*We'll have to get him on the stretcher*."

85.     While Fernando was lying face down and handcuffed in the street, the video shows officers kneeling on Fernando and standing on his arms and legs.

86.     At 10:19:40 p.m., while Fernando was handcuffed and lying face down in the street, Defendant Phillips deployed a fourteenth round of electricity into Fernando's body via his taser.

87.     Following the fourteenth deployment, officers continued to kneel on and stand on Fernando while he was handcuffed and lying face down in the street.

88.     At 10:20:19, an officer warned Fernando to "*stop moving*" and another officer instructed an officer to "*step on him*."

89.     At 10:20:12 p.m., Defendant Stroud stated: "*Dude, if you bite me I'm gonna kick your teeth out!*"

90.     At 10:20:19 p.m., while Fernando was handcuffed and lying face down in the street, Defendant Phillips deployed a fifteenth round of electricity into Fernando's body via his taser.

91.     During this time, the officers were standing on and kneeling on Fernando's body.

92.     At 10:20:58 p.m., an officer can be heard saying: "*Put weight on him.*"

93.     At 10:21:00 p.m., an officer can be heard saying "*Put your knee right here on his ass.*"

94.     At 10:21:23 p.m., Defendant Lewis stated: "*We're going to have to get the ambulance here to strap him in.*"

95.     At 10:21:32 p.m., while Fernando was handcuffed and lying face down, Defendant Phillips deployed a sixteenth round of electricity into Fernando's body via his taser.

96.     At 10:21:38 p.m., Defendant Stroud stated: "*If his arm gets loose, I'm gonna break it.  He is not getting up.*"

97.     At 10:21:56 p.m., an officer stated: "*We gotta get him on a stretcher. They're going to have to get him something.*"

98.     At 10:22:00 p.m., Defendant Phillips can be seen kneeling on the back of Fernando's neck and back and Defendant Butera can also be seen kneeling on Fernando's back.  During this time, Defendant Bowlden is seen standing on Fernando's leg.

99.     At 10:23:28 p.m., one of the officers commented: "*We can't let him get up. Not at this point.*"

100.    At 10:23:40 p.m., Defendant Lewis jokingly commented: "*Can you believe I've done this this long and this is my first naked man?*"  Defendant Bowlden responded, jokingly: "*Welcome to Imagine Fest!*"

101.    At 10:24:30 p.m., Defendant Stroud stated: "*Quit trying to bite me. You are not going to bite me!*"

102.    At 10:24:40 p.m., Defendant Lewis stated: "*He's about to lose all them teefes.*"

103.    At 10:24:53 p.m., an officer instructed Fernando to "*Put your head down*" and then proceeded to press Fernando's face into the pavement.

104.    At 10:25:45 p.m., Fernando can be heard crying and struggling to breathe.

105.    At 10:26:05 p.m., Defendant Lewis can be seen still pressing Fernando's face into the street and telling Fernando "*keep your face down*."

106.    Beginning at 10:26:15 p.m., Fernando does not make any more noises or movements.

107.    At 10:26:53 p.m., Defendant Lewis stood up, stepped on Fernando, and stated: "*My feet starting to cramp standing on him*."

108.    At 10:27:37 p.m., Defendant Butera informed the other officers: "*His pulse rate is through the roof*."

109.    At 10:27:40 p.m., another officer asked Fernando: "*Are you still breathing, brother?*"

110.    At 10:27:47 p.m., one officer commented: "*He's holding his breath*."

111.    At 10:27:52 p.m., Defendant Butera took his knee off of Fernando's back and proceeded to stand on Fernando's leg; however, Defendant Phillips continued to hold Fernando down by kneeling on Fernando's back, neck, and the back of Fernando's head.

112.    At 10:27:54 p.m., Defendant Butera told the other officers: "*Don't relax on him too much*."

113.    At 10:27:57 p.m., Defendant Phillips stated twice: "*He's quit breathing*."  Defendant Butera replied: "*Are you serious?*"

114.   Despite this dire warning that Fernando was not breathing, the officers continued to pin Fernando to the ground.

115.   At 10:28:30 p.m., one officer joking commented: "*I just didn't want to have to beat the boy to death*."  Another officer proudly noted: "*That taser got him pretty good*."

116.   At 10:28:39 p.m., while officers were still pinning Fernando to the ground, one officer stated: "*This boy is going to need some medication*."

117.   At 10:29:29 p.m., Defendant Lewis lifted off Fernando's head while Defendant Butera stood on Fernando's hands.

118.   At 10:29:36 p.m., an officer commented: "*I can't tell if he's breathing*."

119.   At 10:29:58 p.m., Defendant Phillips finally removed his weight from Fernando's back and the back of Fernando's neck.

120.   At 10:30:05 p.m., an officer asked if Fernando was breathing to which another replied that Fernando was "*twitching*."

121.   Despite this warning, Defendant Lewis used his fist to then place his body weight on Fernando's upper back.

122.   At 10:30:28 p.m., a paramedic arrived and asked the officers: "*Has he got a good chest rise?*"

123.   Defendant Lewis responded: "*I have no idea.  We got him to this point and we just didn't touch him no more*."

124.   Paramedics would later report that Fernando was "*unresponsive, not breathing and pulseless*" by the time they arrived.

125.   Paramedics rolled Fernando onto his back and placed him onto a stretcher.  Paramedics immediately began performing CPR on Fernando as he was placed into an ambulance.  Fernando was defibrillated twice and received two rounds of epinephrine, eventually helping him to regain a pulse.

126.   Fernando was initially taken to Piedmont Henry Hospital, where he was intubated, before being transferred to Grady Hospital in Atlanta.

127.   Fernando arrived at Grady Hospital at 12:42 a.m. on September 21, 2019.

128.   Doctors at Grady Hospital found Fernando to be suffering from respiratory failure, renal failure, anoxic brain injury, cardiac arrest, and acute blood loss anemia.

129.   Despite aggressive medical treatment, Fernando died at 1:43 a.m. on September 23, 2019.

130.   During Fernando's arrest, he was in extreme pain and suffering, both physically and mentally, having been tasered multiple times by the Defendant Officers and unable to breathe due to the Defendant Officers' actions.

131.   Fernando did not die immediately at the scene but was conscious for more than 48 hours and in great mental and physical pain and suffering as a result of his injuries which were caused by the Defendant Officers.

132.   An autopsy was performed, and the cause of death was found to be "*ASPHYXIA DUE TO PHYSICAL RESTRAINT IN PRONE POSITION WITH COMPRESSION OF CHEST*."

133.   The medical examiner found that the injuries occurred during "*PHYSICAL ALTERCATION WITH LAW ENFORCEMENT*" and that Fernando's death was a "*HOMICIDE*."

134.   The District Attorney's Office for Henry County is currently investigating the officers who caused Fernando's death.

135.   Fernando became totally unresponsive at approximately 10:26:15 p.m. Yet, officers failed to render aid and continued to pin Fernando to the ground for another 3 minutes and 43 seconds.  All the while, Fernando was naked, in the prone position, unarmed, noncombative, and handcuffed.

136.   At 10:27:40 p.m., the officers acknowledged that Fernando had stopped breathing.  Yet, Officers failed to render aid and continued to pin Fernando to the ground for another 2 minutes and 18 seconds.  All the while, Fernando was naked, in the prone position, unarmed, noncombative, and handcuffed.

137.   The direct and proximate causes of Fernando's injuries and death was the Defendant Officers' use of excessive force.

138.   At all times relevant to this Complaint, the Defendants' use of force on Fernando was unreasonable and excessive.

139.   On October 11, 2019, the Chief of Police for the City of Hampton Police Department found that Defendant Bowlden and Defendant Lewis had violated Hampton Police Department General Order 06-30 in that they were "*Guilty of violation of 'reasonableness' of use of force*."  The Chief of Police also found that the officers violated Hampton Police Department Rule 01-06 for using "*Unprofessional statements*."  These violations pertained to the treatment of Fernando.

140.   On October 15, 2019, the Chief of Police for the City of Hampton Police Department found that Defendant Stroud had violated Hampton Police Department General Order 06-30 in that he was "*Guilty of violation of*

*'reasonableness' of use of force*."  This violation pertained to the treatment of

Fernando.

141.   With regard to Defendant Stroud, he had previously received a

Termination Track letter from the City of Hampton Police Department on July 1,

2019.  He received the Termination Track letter due to his use of excessive force

on a citizen that occurred on June 20, 2019.

142.   Prior to his encounter with the officers, Fernando was a healthy 24-

year-old man who was beloved by his family and friends.

143.   The Fourth Amendment prohibits the use of deadly force in non-

deadly circumstances which do not pose an immediate threat of serious bodily

injury or death.

144.   Prone restraint, which was employed on Fernando, occurs when an

officer places an individual in a prone position and then places weight on the

individuals' back, neck, and/or abdomen.  The prone restraint restricts the

individual's ability to breathe and can result in asphyxiation.

145.   It is well known throughout law enforcement that employing a prone

restraint on an individual for prolonged periods of time can result in death.

146.   It is a national best practice that once an individual has been controlled, it is critical that the individual be moved from the prone position and that their vitals be monitored.

147.   Despite this knowledge, Henry County and the City of Hampton did not provide officers with adequate training on the dangers of asphyxia associated with prone restraint.

148.   Upon information and belief, Henry County and the City of Hampton both had policies which permitted the use of the prone restraint where a suspect did not pose an immediate threat of serious bodily injury or death.

149.   Henry County and the City of Hampton also failed to adequately train its officers on the proper use of the prone restraint and when officers should render aid to individuals who had been subjected to prone restraints.

150.   Upon information and belief, Henry County and the City of Hampton were aware that its policies of allowing prone restraints in non-deadly circumstances had led to the deaths of multiple individuals prior to Fernando's death.

151.   Henry County's and the City of Hampton's policies sanctioning excessive force in the use of prone restraints caused Fernando's death.

**COUNT I**
**VIOLATIONS OF THE FOURTH AMENDMENT FOR**
**EXCESSIVE FORCE AND FAILURE TO INTERVENE**
**AS TO THE DEFENDANT OFFICERS**
**(42 U.S.C. § 1983)**

152.   Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

153.   The Fourth Amendment to the United States Constitution guarantees citizens freedom from unreasonable searches and seizures, which encompasses the right to be free from the use of excessive force in the course of an arrest.

154.   The Defendant Officers used excessive force on Fernando when they committed the following acts:

      a.    Tasering Fernando while Fernando was not resisting or attempting to evade arrest.

      b.    Pinning Fernando to the ground while Fernando was not resisting or attempting to evade arrest.

      c.    Continuing to pin Fernando to the ground after Fernando became unresponsive and stopped breathing.

155.   At all material times, the amount of force used by the Defendant Officers in seizing and arresting Fernando was not reasonably proportionate to the need for that force.

156.   No reasonable officer would have believed that the force described above was necessary in the situation at hand.

157.   Clearly established case law demonstrated that the Defendant Officers' actions were unconstitutional.  *See*, *Glassox v. Argo, City of*, 903 F.3d 1207, 1219 (11th Cir. 2018), explaining: "[A]n officer's use of substantial force in subduing an arrestee once the arrestee has submitted to the officer and ceased any resistance or threatening behavior is excessive."

158.   Even if there had not been clearly established case law, the Defendant Officers would not be entitled to qualified immunity as they used gratuitous and excessive force on Fernando in violation of the Fourth Amendment.

159.   As a direct and proximate result of the Defendant Officers' excessive force, Fernando sustained mental and physical injuries and ultimately death.

160.   The United States Constitution also requires an officer to intervene when he is present during an episode of excessive force and to take reasonable steps to protect the victim of excessive force.

161.   The Defendant Officers violated the Fernando's constitutional rights when they failed to intervene and take reasonable steps to protect Fernando from excessive force.

162.   As a result of the Defendant Officers' unjustified failure to intervene in the excessive use of force, Fernando sustained mental and physical injuries and ultimately death.

163.   Clearly established law demonstrated that the Officers' actions in failing to intervene were unconstitutional. *See, Skritch v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002), explaining, "[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance."

164.   For these reasons, the Officers are not entitled to qualified immunity and are liable under 42 U.S.C. § 1983.

165.   As a direct and proximate result of the acts and omissions described herein, Fernando suffered special and general damages in an amount to be determined by a jury.

166.   The Defendant Officers also acted in a reckless or callous indifference to Fernando's federally protected rights and Plaintiffs are therefore entitled to punitive damages.  Pursuant to 42 U.S.C. § 1983, the Plaintiffs are also entitled to attorneys' fees and expenses of litigation.

## COUNT II
## VIOLATIONS OF THE FOURTEENTH AMENDMENT
## FOR FAILURE TO RENDER MEDICAL AID
## AS TO THE DEFENDANT OFFICERS
## (42 U.S.C. § 1983)

167.   Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

168.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires government officials to provide medical care to individuals who have been injured during the apprehension by police.

169.   Fernando had an objectively serious medical need in that he was not breathing.

170.   The Defendant Officers were deliberately indifferent to Fernando's serious medical need.

171.   The Defendant Officers were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and did in fact draw that inference.  Specifically, the Defendant Officers were aware that Fernando was not breathing and that he would die if he did not resume breathing.

172.   The Defendant Officers disregarded the risk of serious harm. Specifically, the Defendant Officers 1) continued to apply weight to Fernando's

back and neck thereby cutting off his oxygen supply and 2) failed to provide any medical assistance to Fernando such as CPR.

173.   In fact, the Defendant Officers continued to pin Fernando to the ground for more than two minutes after they became aware that Fernando had stopped breathing.

174.   The Defendant Officer's actions amounted to more than gross negligence.

175.   As a direct and proximate result of the Defendant Officers' deliberate indifference to Fernando's serious medical needs, Fernando sustained a wanton infliction of mental and physical pain and ultimately death.

176.   Plaintiffs are therefore entitled to special and general damages in an amount to be determined by a jury.

177.   The Defendant Officers also acted in a reckless or callous indifference to Fernando's federally protected rights and Plaintiffs are therefore entitled to punitive damages.  Pursuant to 42 U.S.C. § 1983, the Plaintiffs are also entitled to attorneys' fees and expenses of litigation.

## COUNT III
## SUPERVISORY LIABILITY FOR EXCESSIVE FORCE
## AS TO DEFENDANT STROUD AND DEFENDANT BUTERA
## (42 U.S.C. § 1983)

178.   Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

179.   Upon information and belief, Defendant Stroud and Defendant Butera were acting as supervisors to the other Defendant Officers.

180.   Both Defendant Stroud and Defendant Butera directed their subordinates to act unlawfully or knew that their subordinates would act unlawfully.

181.   Specifically, both Defendant Stroud and Defendant Butera instructed their subordinates to use excessive force on Fernando by 1) directing the other Defendant Officers to tase Fernando and 2) directing the other Defendant Officers to pin Fernando to the ground.

182.   As Defendant Stroud and Defendant Butera personally participated in the constitutional violations, and as there is causal connection between their actions and the constitutional violations, they are liable for the actions of the other Defendant Officers.

183.  As a direct and proximate result of the acts and omissions described herein, Fernando suffered special and general damages in an amount to be determined by a jury.

184.  Defendant Stroud and Defendant Butera also acted in a reckless or callous indifference to Fernando's federally protected rights and Plaintiffs are therefore entitled to punitive damages.  Pursuant to 42 U.S.C. § 1983, the Plaintiffs are also entitled to attorneys' fees and expenses of litigation.

**COUNT IV**
***MONELL* LIABILITY AS TO HENRY COUNTY**
**AND THE CITY OF HAMPTON**
**(42 U.S.C. § 1983)**

185.  Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

186.  The Henry County Board of Commissioners had final policymaking authority with regard to establishing written policies and training programs governing the conduct of Henry County officers performing functions on behalf of the County.

187.  The City Council of Hampton had final policymaking authority with regard to establishing written policies and training programs governing the conduct of Hampton officers performing functions on behalf of the city.

188.   The written policies and training established and approved by the Board of Commissioners and City Council constitute the official policies of Henry County and the City of Hampton and were the moving force behind and caused Fernando's injuries and death.

189.   Henry County and the City of Hampton had knowledge of their respective police departments' unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

190.   Henry County and the City of Hampton made a deliberate and conscious decision to disregard the known risk of harm that would result from their respective police departments' unconstitutional patterns and practices and were deliberately indifferent and tacitly authorized these practices.

191.   Henry County and the City of Hampton ratified, permitted, and failed to correct customs, patterns, or practices that failed to provide for the safety of arrestees and detainees during arrest, including the handcuffing and restraint process.

192.   Henry County and the City of Hampton also ratified, permitted, and failed to correct customs, patterns, or practices that condoned and required officers to not intervene when other officers used excessive force.

193.   Henry County and the City of Hampton continued to employee the Defendant Officers despite knowledge of the Defendant Officers' repeated unconstitutional, unlawful, or other improper conduct.

194.   By approving and refusing to correct the unlawful practices described above, and by refusing to terminate or discipline the Officers for unlawful conduct, Henry County and the City of Hampton caused the Defendant Officers to act with impunity and without fear of retribution.

195.   The unconstitutional policies, practices, and customs defined herein were the moving force behind Fernando's death.

196.   Fernando died as a direct and proximate result of the acts and omissions by Henry County and the City of Hampton.

197.   As a direct and proximate result of the acts and omissions described herein, Fernando suffered special and general damages in an amount to be determined by a jury.

198.   Henry County and the City of Hampton also acted in a reckless or callous indifference to Fernando's federally protected rights and Plaintiffs are therefore entitled to punitive damages.  Pursuant to 42 U.S.C. § 1983, the Plaintiffs are also entitled to attorneys' fees and expenses of litigation.

**COUNT V**
***CANTON* LIABILITY AS TO HENRY COUNTY**
**AND THE CITY OF HAMPTON**
**(42 U.S.C. § 1983)**

199.   Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

200.   Henry County and the City of Hampton failed to properly train its officers to matters related to the reasonable and appropriate use of force during arrests and intervention in the excessive use of force.

201.   Effectuating an arrest, using force to effectuate an arrest, and intervening in the use of force is a usual and recurring situation with which law enforcement officers for Henry County and the City of Hampton encounter on a regular basis.

202.   Henry County and the City of Hampton knew that its officers needed proper training regarding the use of prone restraint.

203.   Henry County and the City of Hampton, with deliberate indifference to the rights of its citizens, failed to provide adequate training to its officers on the use of prone restraint.

204.   Henry County and the City of Hampton were aware that deprivation of the constitutional rights of its citizens was likely to result from its lack of training and the failure to modify its existing training.

33

205.   The failure of Henry County and the City of Hampton to adequately train and modify training constituted official policies, practices, or customs.

206.   Henry County's and the City of Hampton's failure to adequately train or modify existing training was behind the acts and omissions the Defendant Officers made toward Fernando.

207.   As a direct and proximate result of the acts and omissions described herein, Fernando suffered injuries, experienced physical and emotional pain and suffering, and ultimately died.  Plaintiffs are therefore entitled to special and general damages in an amount to be determined by a jury.

208.   Henry County and the City of Hampton also acted in a reckless or callous indifference to Fernando's federally protected rights and Plaintiffs are therefore entitled to punitive damages.  Pursuant to 42 U.S.C. § 1983, the Plaintiffs are also entitled to attorneys' fees and expenses of litigation.

## COUNT VI
## STATE LAW CLAIM – NEGLIGENCE / WRONGFUL DEATH
## AS TO THE DEFENDANT OFFICERS

209.    Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

210.    The Defendant Officers had a duty to render medical care to arrestees in need of medical care.

211.    The Defendant Officers breached that duty when they failed to render medical care to Fernando even though he needed such care.

212.    Specifically, the Defendant Officers breached this duty when they 1) failed to get off Fernando's body despite Fernando being unresponsive and not breathing and 2) when they failed to perform live saving measures such as CPR on Fernando.

213.    As a direct and proximate result of these breaches, Fernando sustained physical harm and endured pain and suffering, mental and emotional distress, fear, anxiety, and ultimately, death.

214.    The Defendant Officers acted with willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

215.   The Plaintiffs are therefore entitled to general damages, special damages, and punitive damages.

216.   The Defendant Officers are not protected by qualified immunity, because the acts described in this count were performed with malice, willfulness, corruption, or intent to injure.

**COUNT VII:**
**STATE LAW CLAIM – ASSAULT / WRONGFUL DEATH**
**AS TO THE DEFENDANT OFFICERS**

217.   The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

218.   Under the circumstances set forth above, a reasonable person in the Fernando's position would have apprehended a violent injury during his arrest.

219.   Fernando did in fact apprehend a violent injury because of the Defendant Officers' actions.

220.   At no time were the Defendant Officers justified in causing such apprehension of a violent injury to Fernando.

221.   As a direct and proximate result of the assault, Fernando sustained physical harm and endured pain and suffering, mental and emotional distress, fear, anxiety, humiliation, outrage and, ultimately, death.

222.   The Defendants acted with willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

223.   The Plaintiffs are therefore entitled to general damages, special damages, and punitive damages.

224.   The Defendants are not protected by qualified immunity, because the assault on Fernando was performed with malice, willfulness, corruption, or intent to injure.

## COUNT VIII:
## STATE LAW CLAIM – BATTERY / WRONGFUL DEATH
## AS TO THE DEFENDANT OFFICERS

225.   The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

226.   The Defendant Officers intentionally caused physical harm to Fernando when they tased him and pinned him to the ground.

227.   The Defendant Officers intentionally made harmful, insulting, and provoking contact with Fernando when they tased him and pinned him to the ground.

228.   At no time were the Defendant Officers justified in causing such an injury to Fernando.

229.   As a direct and proximate result of the battery, Fernando sustained physical harm and endured pain and suffering, mental and emotional distress, fear, anxiety, humiliation, outrage and, ultimately, death.

230.   The Defendants acted with willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

231.   The Plaintiffs are therefore entitled to general damages, special damages, and punitive damages.

232.   The unlawful actions taken by the Defendant Officers during Fernando's arrest were performed with malice, willfulness, corruption, or intent to injure.

233.   The Defendants are not protected by qualified immunity, because the battery on Fernando was performed with malice, willfulness, corruption, or intent to injure.

### COUNT IX:
### STATE LAW CLAIM – INTENTIONAL INFLICTION
### OF EMOTIONAL DISTRESS
### AS TO THE DEFENDANT OFFICERS

234.   The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

235.   The Defendant Officers' actions described above were intentional, reckless, extreme, and outrageous.

236.   As a direct and proximate result of the Defendant Officers' wrongful conduct described above, Fernando suffered severe emotional distress.

237.   The Defendants acted with willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions.

238.   The Plaintiffs are therefore entitled to general damages, special damages, and punitive damages.

239.   The Defendants are not protected by qualified immunity, because the intentional infliction of emotional distress on Fernando was performed with malice, willfulness, corruption, or intent to injure.

## COUNT X
## VICARIOUS LIABILITY
## AS TO THE CITY OF HAMPTON

240.   Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

241.   On May 12, 2020, the Mayor of the City of Hampton received a letter directed to them on behalf of the family of Fernando.  The letter constitutes an ante-litem notice in compliance with and pursuant to O.C.G.A. § 36-33-5,

concerning the claims against the City of Hampton, Georgia arising from the death of Fernando.[1]

242.   At all times material to the claims raised in this lawsuit, the City of Hampton was insured pursuant to an insurance agreement providing indemnification for liability arising from the operations of the City including, but not limited to, the City's Police Department and the conduct of law enforcement officers employed by the City.

243.   By virtue of its purchase of insurance affording it coverage as described above, the City has waived sovereign immunity with respect to claims of liability and may be subject to liability for the actions of its law enforcement officers, including those named in this lawsuit, by operation of the doctrine of respondeat superior.  *See*, O.C.G.A. § 36-33-1(a).

244.   The City of Hampton is therefore liable for the wrongful acts of the Defendant Officers as detailed in Counts I through IX of this Complaint.

---

[1] Henry County also received an ante-litem notice on or about May 12, 2020 pursuant to O.C.G.A. § 36-11-1.

## COUNT XI
## ATTORNEYS FEES AND COSTS
## AS TO ALL DEFENDANTS

245.   Plaintiffs incorporate and re-allege all preceding paragraphs as though fully pleaded herein.

246.   The Defendants have been stubbornly litigious, have acted in bad faith, and have caused Plaintiffs unnecessary trouble and expense.

247.   Accordingly, the Plaintiffs are entitled to recover expenses of litigation, pursuant to O.C.G.A. § 13-6-11.

248.   Pursuant to 42 U.S.C.A. § 1988, the Plaintiffs are also entitled to attorneys' fees and expenses of litigation.

## PRAYER FOR RELIEF

The Plaintiffs pray that this Court grant judgment against the Defendants on all counts in this Complaint and that the forms of relief required by law and justice be awarded, including as follows:

(a)     That they be granted a trial by jury;

(b)     That Plaintiff Octavio Rodriguez Cira and Plaintiff Fabiola Merlos Martinez, as surviving parents, recover compensatory damages in an amount sufficient to compensate for the full value of the life of Fernando;

(c)     That Plaintiff Octavio Rodriguez, as the administrator of Fernando's estate, recover damages for the mental and physical pain and suffering, emotional distress, fear, anxiety, humiliation and outrage that Fernando experienced prior to his death as well as reimbursement for medical and funeral expenses;

(d)     That Plaintiffs receive an award for all damages recognized by law and recoverable for the violations of Fernando's rights guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution;

(e)     That Plaintiffs recover reasonable attorneys' fees and costs in connection with Fernando's civil rights claims as set forth herein and

42

that they recover attorneys' fees and costs in connection with their

state law claims;

(f)     That prejudgment interest be awarded; and,

(g)     For such other and further relied as this Court deems just and proper.


This 11th day of May, 2021.

                                          PATE, JOHNSON & CHURCH, LLC

                                          /s/ Jess B. Johnson
Pate, Johnson & Church, LLC               Page A. Pate
101 Marietta Street, Suite 3300           Georgia Bar No.: 565899
Atlanta, Georgia 30303
(404) 223-3310                            Jess B. Johnson
Atlanta, Georgia 30303                    Georgia Bar No.: 322066

## CERTIFICATION OF FONT

This certifies that pursuant to LR 5.1, N.D.GA., the above and foregoing has been prepared using Times New Roman font, 14 point.

This 11th day of May, 2021.

PATE, JOHNSON & CHURCH, LLC

/s/ Jess B. Johnson
Page A. Pate
Georgia Bar No.: 565899

Pate, Johnson & Church, LLC
101 Marietta Street, Suite 3300
Atlanta, Georgia 30303
(404) 223-3310                                  Jess B. Johnson
Atlanta, Georgia 30303                          Georgia Bar No.: 322066