IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OCTAVIO RODRIGUEZ CIRA and FABIOLA MERLOS MARTINEZ, as Surviving Parents of FERNANDO OCTAVIO RODRIGUEZ, Deceased, and OCTAVIO RODRIGUEZ as Administrator of the Estate of FERNANDO OCTAVIO RODRIGUEZ, <br><br> PLAINTIFFS, <br><br> v. <br><br> COUNTY OF HENRY; OFFICER ROBERT P. BUTERA, In His Individual Capacity; and OFFICER QUINTON C. PHILLIPS, In His Individual Capacity, <br><br> DEFENDANTS. | CIVIL ACTION <br> NO: 1:21-CV-01999-TCB <br><br> JURY TRIAL DEMANDED |

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

Plaintiff Octavio Rodriguez Cira and Plaintiff Fabiola Merlos Martinez, as surviving parents of Fernado Octavio Rodriguez, deceased, and Octavio Rodriguez, as Administrator of the Estate of Fernando Octavio Rodriguez ("Plaintiffs") hereby file this Memorandum of Law in Support of their Response in

Opposition to Defendants' Motion to Stay and respectfully request that the Court deny the Defendants' Motion to Stay.

## STATEMENT OF FACTS

On September 20, 2019, Henry County Officer Robert P. Butera ("Defendant Butera") and Henry County Officer Quinton C. Phillips ("Defendant Phillips"), along with three officers from the City of Hampton, detained and arrested Fernando Rodriguez ("Fernando") in Hampton, Georgia. Fernando was naked, unarmed, and clearly in need of medical attention (Doc. 1, Par. 1-8). The officers' actions during the arrest of Fernando were captured on body cameras worn by the officers (Doc. 1, Par. 31).

During the course of the arrest, the officers tased Fernando approximately 15 times, at least three of which occurred after Fernando was handcuffed, shackled, and laying on his stomach in the prone position (Doc. 1, Par. 4). The officers also placed their body weight on Fernando's body while Fernando was handcuffed, shackled, and laying on his stomach in the prone position (Doc. 1, Par. 5). Despite acknowledging that Fernando was unresponsive and not breathing, the officers refused to render medical aid or even to get off Fernando's body (Doc. 1, Par. 108-124). Instead, the officers continued to place their body weight on Fernando, thereby depriving Fernando of oxygen (Doc. 1, Par. 5). As a direct result of the

officers' actions, Fernando died on September 23, 2019 at Grady Hospital (Doc. 1, Par. 126-129).

An autopsy was performed, and the cause of death was found to be "*ASPHYXIA DUE TO PHYSICAL RESTRAINT IN PRONE POSITION WITH COMPRESSION OF CHEST*." The medical examiner found that the injuries occurred during a "*PHYSICAL ALTERCATION WITH LAW ENFORCEMENT*" and that Fernando's death was a "*HOMICIDE*." (Doc. 1, Par. 132-133).

Fernando's family filed the instant civil rights action against the five officers, Henry County, and the City of Hampton on May 11, 2021 (Doc. 1). Henry County, Defendant Butera, and Defendant Phillips filed an answer on July 15, 2021 (Doc. 18). On August 12, 2021, the parties filed a Joint Preliminary Report and Discovery Plan (Doc. 21), and on August 16, 2021, the Court granted the parties' request for an 8-month discovery track (Doc. 24). Since that time, the parties have been engaged in discovery. On November 19, 2021, the officers were charged in the Superior Court of Henry County with various offenses, including malice murder, felony murder, aggravated assault, and violation of oath by public officer (Doc. 30-1).

Discovery produced in the above-styled case shows that Defendant Butera and Defendant Phillips authored and filed police reports about the arrest of

Fernando (*See*, Exhibit 2), cooperated with the GBI's investigation by answering questions (*See*, Exhibit 3)[1], filed an answer to Plaintiffs' Complaint (Doc. 18), provided Initial Disclosures to the Plaintiffs (Doc. 26), and answered discovery requests, including interrogatories, in the instant case (*See*, Exhibit 4). Counsel for the Defendants now seek to stay the case. Counsel for the Defendants primarily argue that Defendant Butera and Defendant Phillips will be invoking the Fifth Amendment and, as a result, "*...critical evidence will not be available.*" (Doc. 30-2, p. 6).

## ARGUMENT

"A court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interest of justice.'… However, the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." *S.E.C. v. Wright*, 261 F. App'x 259, 263 (11th Cir. 2008) (unpublished opinion) (*citing*, *United States v. Lot 5, Fox Grove, Alachua Cty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994)). "The court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." *Lot 5*, 23 F.3d at 364.

---

[1] Defendant Butera's report is redacted to remove personal information. Defendant Phillips also submitted a lengthy written statement which is included in the exhibit.

The Eleventh Circuit has explained: "the Fifth Amendment is violated when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment…. Stated plainly, the rule applies when the invocation of the privilege would result in automatic entry of summary judgment." *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991), <u>as amended</u> (Nov. 5, 1991) (citations and quotations omitted).

One district court in the Middle District of Georgia detailed the myriad of factors to be considered in assessing whether 'special circumstances' are present:

> Special circumstances may be established where there is record evidence for the criminal prosecution or [where] the criminal case ... was unconstitutional or inappropriately instituted. District courts within the Eleventh Circuit have also considered the following factors in determining whether the interests of justice require a stay: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the interest of the plaintiff in proceeding expeditiously with this litigation and the potential prejudice to the plaintiff from delay; (3) the burden any particular aspect of the proceedings may impose on the defendant; (4) the efficient use of judicial resources; (5) the interests of persons not parties to the civil litigation; and (6) the interests of the public in the pending civil and criminal litigation. Additional factors include the extent the issues in the civil and criminal cases overlap, and the status of the criminal case, including whether the defendant has been indicted. Finally, a district court should be sensitive to the difference between civil rules of discovery and those restrictions imposed by the criminal rules.

*Dean v. Douglas*, No. 5:12-CV-120 CAR, 2012 WL 6151137, at *3 (M.D. Ga. Dec. 11, 2012) (citations and quotations omitted).

The Defendants have made no suggestion that the related criminal action is somehow unconstitutional or inappropriately instituted. Counsel for Plaintiffs address each of the other relevant factors below:

    A.    <u>The extent to which the Defendants' Fifth Amendment rights are implicated</u>

The Defendants' Fifth Amendment rights are implicated in the instant action but not to the extent that invoking the Fifth Amendment would compel an adverse judgment against the Defendants. The arrest and death of Fernando occurred more than two years ago. Since that time, the Defendants created incident reports about the arrest of Fernando, answered questions put forth by law enforcement regarding the arrest, answered the Plaintiffs' Complaint, provided initial disclosures, and have responded to the Plaintiffs' discovery requests. As far as Counsel can tell, the Defendants have never invoked their Fifth Amendment right against self-incrimination until now.

The Defendants argue that "*the testimony about the force used by each of the officers involved is needed by the parties and the Court to determine whether there were any constitutional violations…*" (Doc. 30-2, p. 6). But this argument is belied

by the fact that the Defendants have already extensively commented on the matter. Their position (*i.e.*, that force was reasonable at all times) has been made abundantly clear through law enforcement's subsequent investigation as well as by the Defendants' responses to the Complaint and Plaintiffs' discovery requests. Moreover, the officers' actions were all captured on video.

There is more than enough evidence for a factfinder to decide whether force was reasonable and whether qualified immunity should apply. The invocation of the right to remain silent will therefore not compel an adverse judgment against the Defendants.

B.     The interest in the plaintiff proceeding expeditiously

Fernando was killed more than two years ago. His family has had to relive Fernando's death at every stage of litigation in the instant case. Delaying the civil action will create additional stress and anxiety on the family as they will have to wait for some indeterminate date in the future for litigation to recommence. For this reason, this factor weighs against the motion to stay.

C.     The burden imposed on the Defendants

The Defendants argue that "*Defendant Henry County in particular needs the testimony of Defendants Butera and Phillips and the other police officers involved in the underlying incident to support its defense…*" (Doc. 30-2, p. 8). The

Defendants, however, fail to explain how the testimony of Defendant Butera and Defendant Phillips will support its defense to Counts 4 and 5 of the Complaint (which allege liability under *Monell* and *Canton*). Law enforcement also conducted its own investigation into the death of Fernando and, as best as Counsel can tell, Defendant Butera and Defendant Phillips cooperated with that investigation. It is unclear how additional testimony from the officers would add to any defenses that Henry County may have.

Moreover, the Defendants are represented by a single law firm. They have presumably been working together for a common goal since they filed their common answer in July of this year. The defendants have failed to explain why nearly five months later Henry County now needs the testimony of Defendant Butera and Defendant Phillips in order to prevail on the *Monell* and *Canton* claims. For these reasons, this factor weighs against the motion to stay.

    D.    <u>The efficient use of judicial resources and interest of the public</u>

The Defendants argue that "*the resolution of the criminal charges likely will assist in the ultimate resolution of issues of this action, or at least the narrowing of the issues.*" (Doc. 30-2, p. 10). But the Defendants have offered no analysis of what those issues are or how the criminal case would assist in narrowing the issues.

Perhaps more importantly, there is no evidence or assertion as to when the criminal case might be resolved. The criminal case will undoubtedly be complex and lengthy. The criminal case involves five police officers accused of murder and both the State and the defense will likely utilize multiple experts. *See*, *Hammonds v. Gray Transportation, Inc.*, 371 F. Supp. 3d 1340, 1347 (M.D. Ga. 2019) (finding a motion to stay inappropriate where "Defendants offered no evidence (or even conjecture) as to when [the defendant's] criminal charges will be resolved"). Without some resolution to the criminal case on the horizon, it cannot be said that staying the civil case is an efficient use of judicial resources.

E. <u>Interests of persons not parties and interests of the public</u>

The public has a heightened interest in resolving this case in a timely manner. More than two years have elapsed since five uniformed police officers killed an unarmed man who was lying naked on the ground. While the criminal case may languish in the Superior Court of Henry County for an indeterminate amount of time, the public has a strong interest in knowing that justice in some form is being diligently pursued. This is especially true for Fernando's family and friends, the members of his community, and the residents of Henry County.

F. <u>Overlap with the criminal case and status of the criminal case</u>

The instant civil case and the criminal case spring from same set of underlying facts, and there is now a pending indictment against Defendant Butera and Defendant Phillips. But these facts alone do not automatically require the Court to stay the case. Indeed, "[t]he Constitution… does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). As previously explained, the Eleventh Circuit has reasoned that, "[t]he court may deny a stay so long as the privilege's invocation does not compel an adverse judgment against the claimant." *United States v. Lot 5, Fox Grove, Alachua Cty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994).

As discussed in subsection (A) above, Defendant Butera and Defendant Phillips have already explained their positions (through law enforcement's subsequent investigation as well as the Defendants' responses in the instant case). There is also video footage of the actions taken by the officers during Fernando's arrest. Under these circumstances, it cannot be said that the Defendants' invocation of the Fifth Amendment will compel an adverse judgment against them.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court deny the Defendants' Motion to Stay.

This 16th day of December, 2021.

                                           PATE, JOHNSON & CHURCH, LLC

                                           /s/ Page A. Pate

Pate, Johnson & Church LLC       Page A. Pate
101 Marietta Street, Suite 3300     Georgia Bar No.: 565899
Atlanta, Georgia 30303            page@patejohnson.com
(404) 223-3310

                                           Jess B. Johnson
                                           Georgia Bar No.: 322066

## **CERTIFICATION**

Counsel hereby certifies that this brief has been prepared with a font (Times New Roman) and point selection (14 point) approved by the Court in LR5.1(B).

This 16th day of December, 2021.

                                              PATE, JOHNSON & CHURCH, LLC

                                              /s/ Page A. Pate

Pate, Johnson & Church LLC        Page A. Pate
101 Marietta Street, Suite 3300      Georgia Bar No.: 565899
Atlanta, Georgia 30303              page@patejohnson.com
(404) 223-3310

                                              Jess B. Johnson
                                              Georgia Bar No.: 322066
                                              jess@patejohnson.com

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing Memorandum of Law with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to all counsel of record in this matter.

This 16th day of December, 2021.

PATE, JOHNSON & CHURCH, LLC

Pate, Johnson & Church LLC
101 Marietta Street, Suite 3300
Atlanta, Georgia 30303
(404) 223-3310

/s/ Page A. Pate
Page A. Pate
Georgia Bar No.: 565899
page@patejohnson.com

Jess B. Johnson
Georgia Bar No.: 322066
jess@patejohnson.com