# GEORGIA BUREAU OF INVESTIGATION
# REGION 10
# INVESTIGATIVE SUMMARY

**10-0090-34-20**

On Saturday, September 21, 2019, at approximately 1:39 a.m. Special Agent (SA) KESHIA MORRIS was located at the Hampton Police Department (HPD), 17 East Main Street, Hampton, Georgia for the purpose of evidence collection from Henry County Police Officer ROBERT BUTERA. This investigative act was in reference to a request by the HPD for the Georgia Bureau of Investigation (GBI) to investigate an officer involved use of force incident that resulted in the death of FERNANDO RODRIGUEZ.

SA MORRIS advised OFC BUTERA that this investigation was criminal in nature, not administrative or disciplinary, and as such, he was not being compelled to answer any questions or make any statements.

SA MORRIS asked OFC BUTERA if he would consent to answering questions related to the Public Safety Statement. OFC BUTERA agreed to answer questions. OFC BUTERA advised that he was not injured during the incident; however, OFC BUTERA showed SA MORRIS two injures on his arm from a previous incident. SA MORRIS took photographs of the previous injuries to BUTERA's arm. See attached. OFC BUTERA was not aware of any other weapons or hazards that needed to be secured. OFC BUTERA was not aware of any outstanding witnesses or suspects. OFC BUTERA advised SA MORRIS the scene of the incident was Oak Street near Windsor Parkway contained within the evidence tape.

OFC BUTERA advised SA MORRIS that he did not deploy his Taser. SA MORRIS photographed one (1) Black in color Taser, serial number X2900A89E and two

**PROPERTY OF GBI**
Further dissemination is prohibited without written approval of a GBI Supervisor

EXHIBIT ___6___

cartridges.

SA MORRIS did not collect BUTERA's Taser.   The photographs were attached to this summary.

SA MORRIS took photographs of BUTERA in the attire worn during the incident.   The photographs were attached to this summary.

This investigative act was concluded at approximately 1:48 a.m.

## ATTACHMENTS

| | |
|---|---|
| PHOTOGRAPH Photographs of attire worn by Officer Robert Butera | (Attachments) |
| PHOTOGRAPH Photographs of Robert Buteras Taser | (Attachments) |
| PHOTOGRAPH Photographs of previous injuries on Officer Robert Buteras arm | (Attachments) |

## ID DATA:

**BUTERA, ROBERT PAUL**   (OFFICER)
DOB: ■
SEX/RACE: MALE/WHITE
COUNTRY: UNITED STATES
OCCUPATION: OFFICER
EMPLOYER:
HENRY COUNTY POLICE DEPARTMENT
110 SOUTH ZACH HINTON PARKWAY
MCDONOUGH, GA 30253
CELLULAR: ■

SPECIAL AGENT KESHIA MORRIS:   10/21/2019
km:   10/21/2019        *hmm   kly   cmv*

Page 2 of 2

731787

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ___6___

# GEORGIA BUREAU OF INVESTIGATION
# REGION 10
# INVESTIGATIVE SUMMARY

**10-0090-34-20**

On Saturday, September 21, 2019, at approximately 1:35 a.m., Special Agent (SA) DAVID JONES was located at the Hampton Police Department in Hampton, Georgia for the purpose of evidence collection. This act was conducted in furtherance of a request made by the Hampton Police Department (HPD) and Henry County Police Department (HCPD) that the Georgia Bureau of Investigation (GBI) investigate the officer use of force incident that resulted in the death of FERNANDO RODRIGUEZ. SA JONES made contact with Henry County Police Officer QUINTON PHILLIPS. Also present, GRADY DUKES, an attorney with Police Officer's Benevolence Association.

Officer PHILLIPS was assigned to Uniform Patrol and worked evening watch at the South Precinct. SA JONES photographed PHILLIPS in the uniform and gear he wore during the incident. SA JONES also photographed PHILLIPS hands. The photos taken by SA JONES are attached to this summary.

SA JONES asked Officer PHILLIPS about the Taser he deployed during the incident. Officer PHILLIPS advised SA JONES that his Taser was taken by his supervisor, Sergeant BESSIE SIMPSON-BAUGH. SA JONES advised Special Agent in Charge (SAC) BAHAN RICH that the Taser assigned to Officer PHILLIPS may be on scene. SAC RICH later advised SA JONES that the Taser was located and documented on GBI Form 20 E-566782. SA JONES attached a copy of the Form 20. The Taser was entered into GBI electronic evidence by SA JOSH ELLIS under barcode BB60940.

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ___5___

**10-0090-34-20**

SA JONES advised Officer PHILLIPS of the following statement:

"This investigation is to determine whether any criminal laws have been violated during the use of force incident.   It is not an administrative or disciplinary inquiry.   You are not being compelled to give any statement or answer any questions.   Your cooperation in this investigation is voluntary."

SA JONES asked Officer PHILLIPS if he would consent to obtaining information for the purpose of the Public Safety Statement.   Officer PHILLIPS agreed to answer questions.   Officer PHILLIPS advised that he was not injured.   Officer PHILLIPS advised that he was not aware of any other weapons or hazards that need to be located.   Officer PHILLIPS advised SA JONES of a house located at the corner of Oak Street and Windsor Pkwy that may have witness.   Officer PHILLIPS advised that he observed individuals on the front porch during the incident.   Officer PHILLIPS advised SA JONES that he was unable to answer questions regarding the scope of the scene because he responded as a backup unit.

This act concluded at approximately 2:00 a.m..

**ATTACHMENTS**

| | |
|---|---|
| GBI EVIDENCE RECEIPT E-566782 | (Attachments) |
| PHOTOGRAPH Henry County Police Officer QUINTON PHILLIPS | (Attachments) |

**EVIDENCE**

| | |
|---|---|
| ONE (1) TASER MODEL X2, X29009R3N | BB60940-Evidence.pdf |

Page 2 of 3

728108

**PROPERTY OF GBI**
Further dissemination is prohibited
without written approval of a GBI Supervisor

EXHIBIT ____5____

I am making this statement to the best of my knowledge in connection with a stressful incident. It has been shown that one's memory and/or ability to recall can be impacted by such incidents. Therefore, I reserve the right to amend this statement as dictated by future memories.

On September 20, 2019 at approximately 2212 hours while listening to my in car radio. Officer Butera was dispatched to Oak Street and Windsor Parkway in reference to the City of Hampton needing back up officers. Approximately 1 or 2 minutes later, the radio operator stated Hampton Officers needed Officer Butera lights and sirens.

I began looking in my GPS to how far I was away from this location. I realized from my location, I was approximately 3 to 5 minutes away from Windsor Parkway and Oak St. I began to drive to that location.

When I arrived at Windsor and Oak Street area, as I exited my patrol car, I activated my Body-worn camera. I observed a naked Hispanic male sliding on his back to get away from Officers Lewis, Officer Bowlden and Officer Stroud (City of Hampton). While I was in the process of getting out of my patrol car, closing the distance to where the naked Hispanic male and the other Officers location (approximately 50-60 feet away from my patrol car), Officer Bowlden then deployed his Taser on the Hispanic male left side of the body (Position of the probes are unknown).

Officer Bowlden's Taser then appeared to run the complete cycle of 5 seconds. Officer Bowlden's Taser did have the effect of Neuro- Muscular incapacitation. The Hispanic male became stiff and ceased all movement for the 5 seconds, while the Taser was active.

I noticed the Hispanic male began to slide on his back after the 5 second cycle of Officer Bowlden`s Taser towards the rear of a City of Hampton Patrol car. He was making what were like growling sounds. I was unable to understand what the Hispanic male was saying. I then reached for the Hispanic male`s left arm I believe. The Hispanic male was sweaty clammy and he then began to pull away from my grasp. The Hispanic male was very strong and easily escaped my grasp. The Hispanic male began swinging his arms in an upward motion trying to strike me in the face.

As the suspect was still being actively resisting, and the Taser impact being no longer effective, I then stepped back and to the right and gave a verbal command for the Hispanic male to stop. Officer Bowlden`s Taser had a loud disconnect sound and the Hispanic male continued to slide his body across the ground. I then deployed my Taser X2. I deployed one cartridge into the right side area of the Hispanic male. The probes from my X2 cartridge entered in to the right side and the right leg.

While my X2 Taser deployed I was able to obtain the effect of Neuro- Muscular incapacitation. While my Taser cycle was active, the Hispanic male became stiff and ceased all movement for the 5 seconds, while the Taser was active. Officers began to move closer to begin handcuffing the male.

After one complete cycle from my X2 Taser, the Hispanic male then began to slide on his right side and back almost immediately. Observing this renewed motion, I gave the Hispanic male verbal commands to stop moving. He did not comply with the commands. I then deployed my second cartridge of my Taser X2.The probes entered the right side near the hip and in the right leg of the Hispanic male. At this point I realized the Hispanic male was recovering more quickly than normal from the Taser impacts.

Officer Stroud and Officer Bowlden then began to reach for their handcuffs. While my Taser X2 was running the 5 Second cycle Officer Stroud was able to place the Hispanic male`s left hand into one side of the hand cuffs. After the cycle was completed the Hispanic male began trying to get away .The Hispanic male then began kicking his feet and moving his right hand away from Officer Lewis. I believe I

told the male to stop moving. At the request of Officer Stroud, I reactivated my Taser X2 by drive stunning the Hispanic male in the middle of the lower back for approximately 1 to 2 seconds.

I believe Officer Lewis was able to get the right hand into an additional pair of handcuffs. I reactivated my X2 for a secondary drive stun in the middle of the lower back for approximately 1 to 2 seconds, due to the Hispanic male trying to pull his hands away from the Officer Lewis before the secondary pair of hand cuffs were unsecured. It is unknown to me who secured the 2 pairs of handcuffs together after the drive stun to the middle of the lower back, but someone did; I did realize the Hispanic male was cuffed in the front. My Taser X2 was left on and was placed to middle of the lower back.

The Hispanic male began trying to turn on his left side and began to swing his hands in attempts to strike us. I then used more weight with my knee in his left shoulder, due to the male laying partially on his left side. I then instructed Officer Butera to place his weight on the butt area of the Hispanic male. Officer Butera then used a part of his body near the left side butt area of the Hispanic male.

Officer Stroud then began to stand on the handcuffs to keep the Hispanic male from hitting us with his hands. Officer Stroud stated to the Hispanic male "Don't bite me, or I will kick you in the mouth." The Hispanic male then turned his head towards Officer Stroud's feet. Officer Stroud kicked the Hispanic male one time in the face.

Several Officers then began to call for an ambulance via radio for the Hispanic male due to Tasers being deployed on the Hispanic male. The Hispanic male is still continuing to fight by moving his legs trying to get his legs free from Officer Bowlden. The Hispanic male was instructed several times to stop moving. At one point Officer Bowlden then went to the trunk of his patrol car and grab a set of leg shackles. I then began asking for Henry County Sergeants to come to our location via my portable radio. The suspect was not lying flat on his chest, he was leaning somewhat on his side.

While waiting for the ambulance Officer Stroud, Officer Lewis, Officer Bowlden, Officer Butera and I used enough weight to maintain control of the male. After approximately 5 to 10 minutes of waiting on the ambulance, just before the arrival of the ambulance, from my perception I noticed what might have been shallow breathing from the Hispanic male. I then asked the other officers on scene "Did he stop breathing?" The Hispanic male then began to move his legs.

Upon the ambulance arriving on scene, there were 2 EMT that began to check the Hispanic male. The EMT then grabbed the stretcher for the ambulance and the EMT then used a sheet to load the Hispanic male on the stretcher. The EMT stated for us to take the handcuffs off the Hispanic male. The male was loaded into the Ambulance and the EMT began assessing the Hispanic male.

*[signature]* 10/8/19