IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OCTAVIO RODRIGUEZ CIRA and FABIOLA MERLOS MARTINEZ, as Surviving Parents of Fernando Octavio Rodriguez, Deceased, and OCTAVIO RODRIGUEZ as Administrator of the Estate of Fernando Octavio Rodriguez,<br><br>     Plaintiffs,<br><br>v.<br><br>COUNTY OF HENRY, OFFICER ROBERT P. BUTERA, In his Individual and Official Capacity, and OFFICER QUINTON C. PHILLIPS, In his Individual and Official Capacity,<br><br>     Defendants. | CIVIL ACTION FILE<br><br>NO. 1:21-cv-1999-TCB |

# **O R D E R**

This case comes before the Court on Defendants Officer Robert P. Butera and Officer Quinton C. Phillips's (the "Officers") and Henry County's motion [30] to stay the case.

## I. Background[1]

On September 20, 2019, Fernando Octavio Rodriguez, disoriented and naked, was walking down a street in Hampton, Georgia. At approximately 10:12 p.m., he was tased by an officer from the City of Hampton Police Department, while officers from the Henry County Police Department observed. He showed no signs of aggression prior to being tased.

At approximately 10:18 p.m., after being tased at least sixteen times, the police pinned Rodriguez to the ground by standing on his head and neck. Soon after, they noticed he was not breathing, but continued to stand on him until paramedics arrived. The paramedics defibrillated Rodriguez twice, and he received two rounds of epinephrine. He eventually regained his pulse.

On September 21, Rodriguez arrived at Grady Hospital. The doctors noted that he was suffering from respiratory failure, renal failure, anoxic brain injury, cardiac arrest, and acute blood loss anemia.

---

[1] The background section of this Order is based on the presumed-as-true averments of the complaint.

Two days later, on September 23, Rodriguez succumbed to his injuries. The medical examiner ruled his death a homicide and determined the cause of death to be asphyxia due to physical restraint in the prone position with the compression of the chest.

On May 11, 2021, Rodriguez's family filed this suit against the Officers and Henry County. The Officers and Henry County filed their answer on July 15.

On November 19, a Henry County grand jury returned an indictment against the Officers. The indictment contained five charges: (1) malice murder; (2) felony murder; (3) felony murder; (4) aggravated assault; and (5) violation of oath by public officer.

On December 2, the Officers and Henry County filed this motion to stay. They argue that the Officers' Fifth Amendment privilege against self-incrimination will be violated if they are deposed, which warrants a stay. Plaintiffs disagree, arguing that the Officers' deposition testimony cannot incriminate them given their extensive interrogatory responses on the issue of reasonable force.

## II. Legal Standard

"The [d]istrict [c]ourt has broad discretion to stay proceedings . . . ." *Clinton v. Jones,* 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). The only time a court must stay a civil proceeding pending the outcome of a related criminal prosecution is when "'special circumstances' so require in the 'interests of justice.'" *United States v. Lot 5,* 23 F.3d 359, 364 (11th Cir. 1994) (quoting *United States v. Kordel,* 397 U.S. 1, 12 & n.27 (1990)). Special circumstances occur when the criminal case is "unconstitutional or inappropriately instituted," or when the civil case is brought solely to obtain evidence for the criminal prosecution. *SEC v. Wright,* 261 F. App'x 259, 263 (11th Cir. 2008) (per curiam).

## III. Discussion

As a preliminary matter, the Court finds that there are no special circumstances. Neither party alleges that the criminal prosecution was unconstitutionally initiated. Nor is there evidence that this civil case was brought solely to obtain evidence for the criminal prosecution. Thus, the Court is not *required* to grant a stay.

The Court now turns to the core issue, which is whether denying the stay will result in the violation of the Officers' Fifth Amendment privilege against self-incrimination. While the Eleventh Circuit has not adopted a factor test, multiple district courts in the Eleventh Circuit apply a six-factor test to determine whether the interests of justice in a case like this require a stay. These factors are: (1) the extent to which the defendant's Fifth Amendment rights are implicated; (2) the interest of the plaintiff in proceeding expeditiously and the potential prejudice to the plaintiff from delay; (3) the burden any particular aspect of the proceedings may impose on the defendant; (4) the efficient use of judicial resources; (5) the interests of persons not parties to the civil litigation; and (6) the interests of the public in the pending civil and criminal litigation. *SEC v. Healthsouth Corp.,* 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003) (citations omitted). Courts also consider additional factors, such as the extent the issues in both the civil and criminal cases overlap and the status of the criminal case. *Id.* (citing *Walsh Secs., Inc. v. Christo Prop. Mgmt., Ltd.,* 7 F. Supp. 2d 523, 527 (D.N.J. 1998)). The Court will now address these factors.

### A. Extent to Which the Officers' Fifth Amendment Rights Are Implicated

The Officers argue that their Fifth Amendment rights will be violated if this case proceeds. They argue that they will be forced to answer potentially incriminating deposition questions that could result in their answers being used against them in the criminal prosecution. As a result, they "will likely exercise their rights under the Fifth Amendment not to answer questions about the incident before the criminal trial." [30-2] at 6.

The facts in *Microsoft Corp. v. Silver Star Micro, Inc.,* No. 1:06-cv-1350-WSD, 2008 WL 115006 (N.D. Ga. Jan. 9, 2008), are pertinent to the facts here. As in this case, the defendant in *Microsoft* had responded to Microsoft's interrogatories. During his deposition, Silver Star's owner refused to answer certain questions, citing his Fifth Amendment privilege. The Court noted that the deposition questions sought information beyond the scope of his interrogatory answers. The Court held that the owner's interrogatory responses did not waive his Fifth Amendment privilege, and did not compel the owner to answer

deposition questions that went beyond the scope of the interrogatory responses.

The situation is the same here. The interrogatory questions are general in nature and ask about previous reprimands, training, roles and responsibilities, history, why the Officers placed Rodriguez in the prone position, why they did not immediately render aid to him, and whether they observed Rodriguez in any pain. The deposition questions presumably would seek more specifics regarding the Officers' state of mind or intent at the time of the incident.

During their depositions, the Officers could invoke their Fifth Amendment privilege and refuse to answer those potentially incriminating questions. However, if the case proceeded to trial, a jury could infer from the Officers' silence that their answers would not be in their best interest. *See, e.g., United States v. A Single Family Residence & Real Prop. Located at 900 Rio Vista Blvd.,* 803 F.2d 625, 629 n.4 (11th Cir. 1986) (The "Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in

response to probative evidence offered against them." (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976))).

However, there is an exception that prevents an adverse inference from being drawn. This exception occurs "when a person, who is a defendant in both a civil and a criminal case, is forced to choose between waiving his privilege against self-incrimination or losing the civil case on summary judgment." *United States v. Premises Located at Route 13,* 946 F.2d 749, 756 (11th Cir. 1991) (quoting *Pervis v. State Farm Fire & Cas. Co.,* 901 F.2d 944, 946–47 (11th Cir. 1990)). "Stated plainly, the rule applies when the invocation of the privilege would result in 'automatic entry of summary judgment.'" *Id.* (quoting *Pervis,* 901 F.2d at 949).

Given the evidence already discovered (and the fact that the Officers have been indicted), it is uncertain whether the Officers' invocation of the privilege would result in an adverse judgment. Thus, this factor weighs somewhat in favor of granting a stay.

### B. Interest in Plaintiffs Proceeding Expeditiously with the Litigation and the Potential Prejudice from a Delay

The Court acknowledges Plaintiffs' desire to proceed expeditiously with this litigation. Plaintiffs argue that they have suffered for years and will continue to suffer if the case is stayed. This factor weighs against granting a stay.

### C. The Burden Placed on Defendants from These Proceedings

All three Defendants argue that Henry County needs the Officers' testimony and other officers' testimony to support its defense. Without that testimony, Henry County cannot effectively mount a defense against Plaintiffs' claims.

Plaintiffs counter that Henry County has failed to "explain how the testimony of Defendant Butera and Defendant Phillips will support its defense to Counts 4 and 5 of the Complaint (which allege liability under *Monell* and *Canton*)." [31-1] at 8.

A *Canton* claim, first enunciated in *City of Canton v. Harris,* 489 U.S. 378, 388 (1989), allows the inadequacy of police training to serve as the basis for 42 U.S.C. § 1983 liability "only where the failure to train

9

amounts to deliberate indifference to the rights of persons with whom the police come into contact."

Similarly, a *Monell* claim allows liability under 42 U.S.C. § 1983 only when the municipality itself causes the constitutional violation. *Monell v. Dep't of Soc. Servs. of N.Y.C.,* 436 U.S. 658, 694 (1978).

The Court generally agrees with the Plaintiffs. Henry County has failed to show why the Officers' *deposition testimony* is essential to its defense. Moreover, these two claims focus solely on the County's actions and policies.

The entirety of Henry County's defense is not intertwined with the Officers' potential deposition testimony. The Court finds that this factor weighs against granting a stay.

### D. Efficient Use of Judicial Resources

If a stay is not granted, the Officers likely would assert their Fifth Amendment privilege during their depositions. However, that is not the only evidence that is available to both parties. Among other evidence, there is body camera footage that shows the entire incident, as well as the Officers' interrogatory answers. Moreover, not staying the case

would allow both sides to proceed with other discovery than the Officers' depositions. This factor weighs against granting a stay.

### E. Interests of Persons Not Party to the Litigation and Interests of the Public

Plaintiffs argue that the public is extremely interested in the resolution of this case and that the public has "a strong interest in knowing that justice in some form is being diligently pursued." [31-1] at 9.

The Court agrees that the public has an interest in the resolution of this case. However, the Court does not value that interest more than the Officers' Fifth Amendment privilege. To address Plaintiffs' concerns about unnecessary delay, the Court will allow the case to proceed, but without the Officers' depositions. This factor weighs somewhat against granting a stay.

### F. Extent of Overlap of Issues in the Criminal and Civil Cases

Plaintiffs assert § 1983 claims against the Officers. Specifically, they allege that the Officers used excessive force in restraining Rodriguez that resulted in his death. The criminal charges against the

Officers rest on the same facts as this civil case. The question in this case is whether they used excessive force, and the question in the criminal case is whether that force constitutes murder and/or aggravated assault. Importantly, the parties do not dispute that significant overlap exists between the two cases.

With this degree of overlap, the Officers would not be able to testify during their depositions without jeopardizing their presumption of innocence and their defense against the charges alleged in the state court indictment. If they chose to assert their Fifth Amendment privilege, they would also suffer from the negative inference that might be drawn from invoking their privilege. This factor weighs in favor of granting the stay.

**IV. Conclusion**

Although the Officers would presumably assert their Fifth Amendment privilege during their depositions, the case need not be entirely stayed until the criminal trial is complete. To balance the Officers' privilege and Plaintiffs' desire to proceed with this case, the Court will allow discovery to proceed, but the two Officer Defendants

shall not be deposed. Therefore, the motion [30] to stay is granted in part and denied in part.

IT IS SO ORDERED this 21st day of January, 2022.

Timothy C. Batten, Sr.
Chief United States District Judge